UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PATRICK MECHEM, | ) |
| Plaintiff, | ) |
| v. | ) CASE NUMBER: 1:19 CV 0095-HAB |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## OPINION AND ORDER

After Plaintiff, Patrick Mechem ("Mechem"), underwent podiatric surgery by a doctor employed by the United States Department of Veterans Affairs ("VA"), he alleges his foot pain and mobility worsened. He sued the United States ("the Government") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. seeking damages for malpractice. (Compl. ¶¶ 31–36, ECF No. 1.) Before the Court is the Government's Motion for Summary Judgment (ECF No. 15) asserting that Mechem's claim is time-barred. Mechem responded in opposition to which the Government replied (ECF Nos. 20, 22). Because genuine issues of material fact abound with respect to when Mechem's claim accrued, the Government's motion will be DENIED.

## APPLICABLE STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific

facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## **FACTUAL BACKGROUND**

Given the limited issue presented in the Government's motion, the Court need not be overly zealous in its review of the factual record as it relates to the details of the care Mechem received. Instead, the Court sets out a general factual background regarding Mechem's medical condition and treatment with its primary focus being the factual allegations related to Mechem's knowledge and/or awareness of the accrual of his malpractice claim. Mindful of this, the facts are as follows:

Mechem is a veteran of the United States Air Force. (Decl. of Patrick Mechem ¶ 2, ECF No. 20-1.) At all times relevant to his Complaint, Mechem worked as an Air Force Junior Reserve Officer Training Corps instructor ("JROTC") for the South Bend Community School Corporation. (Dep. of Mechem at 8–9, ECF No. 16-2.)

2

On March 14, 2013, Mechem saw his primary care physician at the VA clinic in Northern Indiana, complaining of burning on the bottom of his feet and soles. (Mechem Dep. at 38–39; Mechem Decl. ¶ 4.) His primary care physician ordered x-rays and further referred Mechem to VA podiatry. (Medical Record at 54, ECF No. 16-1.)

On July 19, 2013, Mechem saw Dr. Bradley Hammersley ("Dr. Hammersley") for evaluation of his foot pain. (Mechem Dep. at 44, 46.) Upon manipulation of Mechem's right foot, Dr. Hammersley noted that his pain focused at the metatarsals that radiated distally. (Med. R. at 48.) After reviewing his x-rays, Dr. Hammersley found that Mechem had an old fracture at the 5th metatarsal still tender to palpation and that he had high arches in both feet. (*Id.*; Mechem Dep. at 47, 50.) Dr. Hammersley prescribed custom molded orthotics and scheduled a follow-up appointment with Mechem in ninety days. (Mechem Dep. at 51–52.)

Mechem followed up with Dr. Hammersley on October 23, 2013. (Med. R. at 47.) Mechem informed Dr. Hammersley that the orthotics did not help and that he thought they made his pain worse. (Mechem Dep. at 52–53.) Upon examination, Dr. Hammersley noted that the right foot 5th metatarsal base continued to be tender to palpation with swelling. (Med. R. at 47.) Dr. Hammersley advised Mechem that the fracture was unstable and required surgery.[1] (Mechem Dep. at 53.) Mechem testified that Dr. Hammersley explained to him that his foot would "at best be fixed, and I'd probably be able to walk better and have less pain; and – and at worse it wouldn't take." (*Id.* at 53–54.)

---

[1] In his deposition, Mechem acknowledges that Dr. Hammersley showed him the x-ray of his right foot and pointed out the purportedly old fracture. (Mechem Dep. at 48.) However, in his Declaration, Mechem states that he was not informed prior to surgery "that the radiologist who read the x-rays … [of] my foot did not report any fracture in my foot or that there was a conflict between what Dr. Hammersley described as a fracture and the actual x-rays which did not show a fracture." (Mechem Decl. ¶ 7.)

On February 12, 2014, Dr. Hammersley performed an open reduction internal fixation of metatarsal fracture on Mechem's right foot. (Mechem Dep. at 12.) Prior to the surgery, Mechem signed a "Consent for Clinical Treatment/Procedure" that detailed the known risks and side effects of the treatment/procedure. (Mechem Decl. ¶ 8; Decl. of Robert Chaiken, Ex. B-2, p. 42, ECF No. 20-8.) This document highlighted surgical risks such as infection, nerve injury, blood vessel injury, scarring, secondary fractures, and "less than complete recovery of normal functions or pain relief." (*Id.*)

Dr. Hammersley's operative findings indicated that Plaintiff had an incompletely healed 5th metatarsal base fracture on his right foot. (Med. R. at 24, 101–02.) During surgery, Dr. Hammersley inserted a screw into the 5th metatarsal. (Med. R. at 102.) The first screw inserted was too long. It was removed and replaced with a shorter second screw. (*Id.*) Dr. Hammersley's records indicate that the second screw "appeared to be in good anatomic and functional position with good reduction and apposition of the fracture fragments after tightening of the screw." (*Id.*)

After surgery, Mechem testified that his right foot was not improved and, in fact, worsened. (Mechem Dep. at 12.) He had new pain in a different location of his foot, and he developed a limp. (*Id.* at 31–32.) When Mechem returned for a post-surgical follow-up, Dr. Hammersley indicated to Mechem that a second surgery may be required. (*Id.* at 60: "…he said he might have to do a second surgery. We were just going to take our time, and maybe it will heal up on its own."; Mechem Decl. ¶ 10.) During conversations with Dr. Hammersley about his increased pain, Mechem was advised that the pain was normal following surgery. (Mechem Decl. ¶ 10.)

Throughout his recovery, Mechem's pain continued to increase. (Mechem Dep. at 22: "There wasn't a day that went by that I didn't know that my foot was injured. There was no day I

4

walked without pain.") Mechem indicated his pain level increased from pre-surgery levels of mild (a 1 or 2 on a scale of 10) to a post-surgery level of severe (a 7 to 10). (*Id.* at 23.)

On October 17, 2014, Mechem followed up again with Dr. Hammersley since his pain had not resolved. Dr. Hammersley informed Mechem that the surgery "had not worked to fix the issues with my foot and I needed a second surgery." (Mechem Decl. ¶ 11; Chaiken Decl. Ex. B-2 p. 4.) He recommended a second surgery in five months to remove the displaced bone and transfer the peroneus brevis tendon. (Chaiken Decl. Ex. B-2 p. 2.) Mechem did not return to Dr. Hammersley for any treatment after this October visit because he "moved out of the area and had other issues going on [in] my life." (Mechem Decl. ¶ 11).

Mechem testified that prior to surgery he was "very active," rode bicycles, and taught martial arts. (Mechem Dep. at 34.) He could walk a maximum of fifteen to twenty miles at a time but states that after surgery he was limited in his ability to walk distances over two miles. (*Id.* at 35.) Mechem now has difficulty walking uphill or on inclines, stepping off curbs, and walking on uneven surfaces. (*Id.*) He likewise is affected by changes in weather; cold or damp weather causes pain in his foot. (*Id.* at 36). He has occasional swelling. (*Id.* at 37).[2]

Dr. Hammersley released Mechem to return to work in May 2014. (Med. R. at 16.) Three weeks after Mechem returned to work, it became apparent to Mechem that he could no longer drill his JROTC students as he had done prior to his surgery. (Mechem Dep. at 20.) By the end of 2014, Mechem realized that he could no longer perform physical activities and training, such as calisthenics and running, required of a JROTC instructor. (Mechem Dep. at 20–21.) Mechem described the changes as follows:

---

[2] In the winter of 2015, Mechem was involved in a single person automobile accident on the Indiana toll road. (Mecham Dep. at 23–24). Mecham attributes the accident to his inability to brake properly with his right foot. (*Id.*) He testified that he believes he "applied the brakes too hard because my feel isn't good anymore…. And I rotated about four times into a guardrail." (*Id.* at 24.)

> Well, before the surgery I could do pretty much everything I needed to do required by the Air Force for – for drilling ceremonies, military drilling ceremonies. Afterwards I couldn't pivot anymore. I couldn't about-face, if you're familiar with what that is. I couldn't march throughout a whole day when I had seven classes that I had to teach this to. I couldn't do it all day. It was impossible. So I became more or less immobile.

(Mechem Dep. at 15.) Mechem states that he "did not associate this foot pain with the surgery" because Dr. Hammersley had indicated that the pain was a normal part of the recovery process. (Mechem Decl. ¶ 16.) However, because of these difficulties, in September 2015, Mechem began contemplating retirement. (Mechem Dep. at 13.) In January 2016, Mechem gave notice of his intent to retire in July 2016. Mechem agreed in his deposition that if he had not had his foot surgery, he would have been able to continue working. (*Id.* at 14.)

On February 27, 2018, the VA sent Mechem a letter that stated his, "past podiatric procedure may not have met the standard of care" and requesting that he contact the VA to discuss the care he received and "how we feel it deviated from the standard of care." (Mechem Decl. Ex. A-1 (VA letter), ECF No. 20-2.)[3] Mechem, in turn, contacted the VA and set up this meeting. (Mechem Decl. ¶ 18.)

On July 18, 2018, Mechem had a video conference with the VA. (Mechem Decl. Ex. A-2 ("Conference Call Report"), ECF No. 20-3.) The Conference Call Report details that, though Dr. Hammersley documented that Mechem had an old fracture of the 5th metatarsal base, this conclusion was unsupported by the diagnostic data. (*Id.* at 2). It goes on to illuminate numerous standard of care issues with the treatment Mechem received, including that "[d]uring surgery Dr.

---

[3] The VA notified 110 patients of Dr. Hammersley's improper care through the "adverse event disclosure process." (Stipulation, ECF No. 20-12). Although it only notified 110 patients, 415 surgical cases were reviewed. (ECF No. 20-11.) Interestingly, of the 110 notified, 76 filed an SF-95 after being notified and none had filed an SF-95 prior to being notified.

Hammersley resected the 5th metatarsal. There was no evidence of a fracture on the previous four x-rays" (*Id.*) and, with respect to the screw placement, "post-operative films showed a nondisplaced fracture, with the screw being too short and not wide enough." (*Id.* at 2–3.)[4] During the call, Mechem was advised of the process for obtaining VA disability compensation and his right to file an administrative tort claim.

Subsequently, Mechem filed his administrative claim with the VA on September 27, 2018, by submitting a Standard Form 95 ("SF95"), claiming malpractice. (Compl. ¶ 4.) On December 28, 2018, the VA denied his claim because the "tort claim is barred unless it is presented within two (2) years after the claim accrues…." (Mechem Decl. Ex. A-4 (denial letter), ECF No. 20-4).

With respect to whether Mechem knew or could have known sooner of the problems with his surgery, Dr. Hammersley testified at his deposition as follows:

> Q: …So …would you agree with me, Dr. Hammersley, that in, in a lot of instances in connection with podiatric surgery, in general, that it might be very difficult for a patient to be able to, particularly if they didn't have any medical background or training or anything of that nature, differentiate between what's a normal post-op symptom, like pain and inflammation, versus some sort of an injury that occurred during the surgery?
>
> A: Yeah. Yes, I do. I think they would have some difficulty.
>
> Q: They might not be able to figure that out, that they were injured during a surgery?
>
> A: I couldn't expect them to.

(Dep. of Dr. Hammersley at 114, ECF No. 20-9.) Dr. Hammersley further agreed that it "would be difficult for [a patient] to notice" that they had been the victim of some sort of a malpractice event or a breach in the standard of care in connection with podiatric surgery. (*Id.*)

---

[4] The Government's brief in support of its motion for summary judgment entirely omits any discussion of the VA letter Mechem received or the Conference Call Report.

**DISCUSSION**

A plaintiff must file an FTCA claim "within two years after such claim accrues" or it is "forever barred." 28 U.S.C. § 2401(b); *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997). An FTCA medical malpractice claim accrues when the plaintiff discovers the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 122–24 (1979). Notably, accrual does not await "awareness by the plaintiff that [the] injury was negligently inflicted." *Id.* at 123. Rather, the statute of limitations begins to run when "an individual actually knows enough to tip him off that a governmental act (or omission) may have caused his injury; or a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011). Thus, it allows for either a subjective analysis or an objective analysis. *Blanche v. United States*, 811 F.3d 953, 958 (7th Cir. 2016). "The point in time at which the plaintiff knew or should have known of an injury is a question of fact . . . and the trial judge may make this determination as a matter of law only if no reasonable person could disagree on the date." *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989).

In its Motion, the Government makes two assertions. First, it argues that plaintiff subjectively knew well before he filed his administrative claim in September 2018 that there was an issue with the surgery he received from Dr. Hammersley in February 2014. The Government argues that Mechem must demonstrate that his claim "accrued" after September 27, 2016, which is two years prior to the date Mechem filed his SF-95 with the VA. To this end, the Government argues that Mechem was "keenly aware" that his right foot was far worse after the surgery than before and goes on to tick off all the incidents prior to September 2016 that it believes should have put Mechem on notice of a problem. (Gov't Br. at 14–15.) These incidents and facts include:

8

Mechem's increased pain, his development of a limp, his inability to perform the duties as a JROTC officer and the car accident Mechem attributed to his foot issues. Thus, on this point, the Government asserts that Mechem knew or should have known well before September 2016 that negligence related to the foot surgery may have caused his injury.

Second, it asserts that even if Mechem was not actually aware by September 2016, he was objectively aware since a reasonably diligent person having multiple negative changes in their condition post-surgery would have investigated further prior to that date. (Gov't Br. at 15–16.) Again, the Government, this time by chart, lists all the post-surgical issues Mechem experienced to persuade the Court that it was not objectively reasonable for Mechem to not explore further whether he suffered an injury during the surgery.

In response, Mechem contends that his claim did not accrue until he received the letter from the VA on February 27, 2018. It is then, he reasons, that he had information from which he could clearly attribute his foot pain to the podiatric surgery by Dr. Hammersley, i.e., government action. As support for this position, Mechem points out that prior to his receipt of the VA's letter, Dr. Hammersley repeatedly assured him that his post-surgical pain and issues were a normal part of the recovery process. Additionally, Dr. Hammersley discussed a second surgery with Mechem because the first surgery failed to fix the issues with his foot. Thus, Mechem emphasizes his reasonable reliance on his treating doctor's evaluation and determination that his post-surgery condition, while normal, required a secondary surgery.

Several courts have held that a physician's assurances to a patient that complications or conditions are normal are material to the question of when a patient became or should have become aware of the probable cause of the injury. *Osborn v. United States*, 918 F.2d 724, 733 (8th Cir. 1990) ("In essence, the government's argument is that Shawna's mother should have known the

9

cause of Shawna's difficulties when the doctors, including specialists in pediatrics and pediatric neurology, had not yet reached a conclusion. The argument simply answers itself. Dr. Oksol's statement to Mrs. Osborn that Shawna was to receive no more pertussis and his written notation on Shawna's immunization record did not impart sufficient information to the Osborns so that they can be charged with actual or constructive knowledge."); *McDonald v. United States*, 843 F.2d 247, 248 (6th Cir. 1988) ("Since a patient may rely upon the advice of his treating physician, McDonald had no reason to doubt the advice of his physician and inquire about any injury or its cause."); *Brazzell v. United States*, 788 F.2d 1352, 1356 (8th Cir. 1986) ("Appellee was advised by her doctor in January 1977 that the vaccination could not be the cause of her continued suffering. In the face of this advice, it would be unfair to charge appellee with reason to know differently."); *Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir. 1984) ("[W]hen [plaintiff] tried to find out why her condition was getting worse, the Navy doctor repeatedly assured her that her condition was a normal consequence of the perforated uterus. Such assurances may be reasonably relied on by a patient."); *Dubose v. Kan. City S. Ry. Co.*, 729 F.2d 1026, 1031 (5th Cir. 1984) ("When a plaintiff may be charged with awareness that his injury is connected to some cause should depend on factors including how many possible causes exist and whether medical advice . . . lays to rest a plaintiff's suspicion regarding what caused his injury."). In sum, "plaintiffs seeking to understand the cause of an injury may reasonably rely on advice and assurances by doctors." *Chamness v. United States*, 835 F.2d 1350, 1353 (11th Cir. 1988).

Here, this Court is hard-pressed to conclude as a matter of law that Mechem was not entitled to rely on the explanations of his treating physician. Accepting, as the Court must, the facts favorably to Mechem, throughout 2014, Mechem was assured that his recovery was normal and that, although the surgery did not resolve his problem, a second surgery could do so. There is

simply nothing glaring in the record that would give rise to a conclusion that Mechem was on notice (or that a reasonable person in Mechem's position would have been on notice) in 2014 that Dr. Hammersley's negligence caused Mechem's increased pain.

But, it is the time period after 2014 that attracts additional focus in the Government's briefs. The Government contends that as Mechem's mobility and pain worsened to the point that he could no longer perform his job and forced him to retire in July 2016, he should have been on notice or a reasonable person would have been on notice that something was gravely wrong attributable to the surgery. The Government asserts "[Mechem] has not identified any medical advice supporting that the increased pain and physical changes and limitations were going to last indefinitely, and thus cannot support a claim of reasonable reliance." (Gov't Reply at 5.)

The Court disagrees. At this stage, Mechem is entitled to all reasonable inferences from the facts and the facts, read favorably to Mechem, indicate that Dr. Hammersley advised him in October 2014 a second surgery would be required to fix his foot. Extrapolated further, this information raises, at a minimum, an inference that until Mechem underwent a second surgery his pain and mobility issues would continue indefinitely. A factfinder, when presented with these facts, could reasonably conclude that Mechem believed he required additional surgery, as his doctor advised him, and that he would have ongoing pain and physical limitations unless and until he had a second surgery. Thus, the Court cannot conclude as a matter of law it was unreasonable for Mechem to rely on his physician's advice that a second surgery was required. Nor can the Court conclude as a matter of law that the fact that Mechem was advised that a second surgery was required translates into notice of negligence during the first surgery.

Nevertheless, the Government persists that after Mechem was forced to retire in July 2016 because he could no longer perform the physical duties of his job, he should have and did connect

his foot injury with the surgery. (Gov't Reply at 7, noting that Mechem answered "yes" when asked if the foot surgery performed by Dr. Hammersley was the direct cause of his retirement.) This, the Government urges, is sufficient to show that his claim accrued by then. However, this is not a fair reading of the record. Mechem explained that while his mobility decreased and his pain increased after the surgery, he believed that the surgery had not worked and that his pain was because the surgery did not "take." (Mechem Decl. ¶¶ 11, 17.) A failed surgery does not always equate to a negligent one; thus, at this stage, the Court cannot conclude as a matter of law that Mechem's belief that his surgery had been unsuccessful was sufficient knowledge to "tip him off" to the doctor's negligence or require him to inquire deeper.

Admittedly, the collective facts the Government cites perhaps reasonably suggest that Mechem was subjectively on notice and reasonably should have discovered or followed up with another physician prior to receiving direct notice from the VA. Better yet, a jury presented with these facts may well conclude that when Mechem's pain and discomfort continued into 2016— well after a recovery phase of the initial surgery—a reasonable person in his position should have sought follow up treatment or investigated the source of his pain and discomfort.

However, that is only one side of the equation. Mechem has proffered factual evidence (and case law indicates he's entitled to rely upon it) that he was assured by Dr. Hammersley that the post-surgical pain and complications were normal; and (2) that a second surgery was warranted to correct the pain and complications he was having. Additionally, Mechem submits the deposition testimony from Dr. Hammersley wherein he testified that it would have been difficult for an untrained individual to identify the difference between a normal recovery process and a surgical mistake creating a problem. Thus, a jury when presented these facts may find it was completely objectively and subjectively reasonable for Mechem to rely on the statements of his physician

12

without inquiring further about the cause. Indeed, "the law should not encourage patients to assume their doctors are responsible for negative outcomes, let alone penalize patients who do not turn on their doctors at the first sign of trouble." *E.Y. ex rel. Wallace v. United States,* 758 F.3d 861, 867 (7th Cir. 2014).

In sum, since both sets of inferences from the facts, when pitted against each other, are reasonable, they create a genuine issue of material fact as to when Mechem's claim accrued for purposes of the FTCA. Accordingly, the Government's Motion for Summary Judgment is DENIED.

## **CONCLUSION**

Based on the foregoing, the Court **DENIES** the Government's Motion for Summary Judgment (ECF No. 15).

SO ORDERED on May 5, 2020.

        s/ *Holly A. Brady*
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT